## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

In re:

ALFRED ANTONIO WILSON,                          CHAPTER 13

        DEBTOR.                                   CASE NO. 24-33304-KLP

NEWREZ LLC D/B/A SHELLPOINT MORTGAGE
SERVICING AS SERVICER FOR DEUTSCHE BANK
NATIONAL TRUST COMPANY, AS TRUSTEE FOR
MORGAN STANLEY IXIS REAL ESTATE CAPITAL
TRUST 2006-2 MORTGAGE PASS THROUGH
CERTIFICATES, SERIES 2006-2,

        MOVANT,

vs.

ALFRED ANTONIO WILSON
FEDA WILSON, CODEBTOR
and SUZANNE E. WADE, TRUSTEE,

        RESPONDENTS.

### IMPORTANT NOTICE

**If you have been impacted by COVID-19, you may contact NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for Deutsche Bank National Trust Company, as Trustee for Morgan Stanley Ixis Real Estate Capital Trust 2006-2 Mortgage Pass Through Certificates, Series 2006-2 to discuss a personalized solution at 1-800-365-7107.**

### MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### AND CODEBTOR STAY UNDER 11 U.S.C. §1301(c)(3)
### (REAL PROPERTY LOCATED AT 225 TAYLOR RIDGE WAY, PALMYRA, VA 22963-4931)

#### NOTICE

YOUR RIGHTS MAY BE AFFECTED.  YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE.  (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)

TO:     ALFRED ANTONIO WILSON, DEBTOR
       SUZANNE E. WADE, TRUSTEE

IF YOU DO NOT WISH THE COURT TO GRANT THE RELIEF SOUGHT IN THE MOTION, OR IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THE MOTION, THEN WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE OF THIS MOTION, YOU MUST FILE A WRITTEN RESPONSE EXPLAINING YOUR POSITION WITH THE

D. Carol Sasser, Esquire
Counsel for Movant
Samuel I White, P.C.
Bar No. 28422
448 Viking Drive
Suite 350
Virginia Beach, VA 23452
(757) 490-9284
File No. 93019

**COURT AND SERVE A COPY ON THE MOVANT.  UNLESS A WRITTEN RESPONSE IS FILED AND SERVED WITHIN THIS FOURTEEN (14) DAY PERIOD, THE COURT MAY DEEM OPPOSITION WAIVED, TREAT THE MOTION AS CONCEDED, AND ISSUE AN ORDER GRANTING THE REQUESTED RELIEF WITHOUT FURTHER NOTICE OR HEARING.**

**IF YOU MAIL YOUR RESPONSE TO THE COURT FOR FILING, YOU MUST MAIL IT EARLY ENOUGH SO THE COURT WILL RECEIVE IT ON OR BEFORE THE EXPIRATION OF THE FOURTEEN (14) DAY PERIOD.**

**TO:     FEDA WILSON, CODEBTOR**
**IF YOU DO NOT WISH THE COURT TO GRANT THE RELIEF SOUGHT IN THE MOTION, OR IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THE MOTION, THEN WITHIN TWENTY (20) DAYS FROM THE DATE OF SERVICE OF THIS MOTION, YOU MUST FILE A WRITTEN RESPONSE EXPLAINING YOUR POSITION WITH THE COURT AND SERVE A COPY ON THE MOVANT.  IF YOU DO NOT FILE A WRITTEN RESPONSE BY THE DEADLINE SHOWN, THE LAW PROVIDES THAT THE STAY PROTECTING YOU FROM FURTHER LEGAL ACTION AGAINST YOU BY THIS CREDITOR WILL AUTOMATICALLY TERMINATE AS PROVIDED FOR IN 11 U.S.C. § 1302(d).**

**IF YOU MAIL YOUR RESPONSE TO THE COURT FOR FILING, YOU MUST MAIL IT EARLY ENOUGH SO THE COURT WILL RECEIVE IT ON OR BEFORE THE EXPIRATION OF THE TWENTY (20) DAY PERIOD.**

**THE PRELIMINARY HEARING IS SCHEDULED TO BE HELD ON JULY 16, 2025 AT 9:30 AM AT THE U.S. BANKRUPTCY COURT, JUDGE PHILLIPS' COURTROOM, 701 EAST BROAD STREET, RM. 5100, RICHMOND, VA.**

NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for Deutsche Bank National Trust Company, as Trustee for Morgan Stanley Ixis Real Estate Capital Trust 2006-2 Mortgage Pass Through Certificates, Series 2006-2 ("Movant") hereby moves this Court, pursuant to 11 U.S.C. §362 and 11 U.S.C. §1301(c), for relief from the automatic stay with respect to certain real property of the Debtor and Codebtor having an address of **225 Taylor Ridge Way, Palmyra, VA 22963-4931** (the "Property"), for all purposes allowed by the Note (defined below), the Deed of Trust (defined below), and applicable law, including but not limited to the right to foreclose.  In further support of this Motion, Movant respectfully states:

1.    This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §157 and §1334, 11 U.S.C. §362(d) and §1301(c)(3), and this matter is a core proceeding.

2.    A petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the Debtor on September 4, 2024.

3.    A Chapter 13 Plan was confirmed on November 26, 2024.

4.    Alfred Wilson has executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $357,540.00 (the "Note").  A copy of the Note is attached hereto as Exhibit A.

5.    Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtor and the Codebtor under and with respect to the Note and the Deed of Trust are secured by the Property and the other collateral

described in the Deed of Trust.  The lien created by the Deed of Trust was perfected by recording of the Deed of Trust in the office of the Clerk of the County of Fluvanna, Virginia. A copy of the recorded Deed of Trust is attached hereto as Exhibit B.

6.      The legal description of the Property is:

**ALL that certain lot or parcel of land, with all improvements thereon and appurtenances thereto, lying and being situate in the Palmyra District of Fluvanna County, Virginia, shown as Lot 4, Phase I, Taylor Ridge Estates, on a plat of survey by Rivanna Engineering & Surveying, PLC, dated May 24, 2005, recorded in the Clerk's Office of the Circuit Court of Fluvanna County, Virginia, in Deed Book 639, page 98.**

**BEING the same property conveyed unto Alfred Wilson and Feda Wilson by Deed from Eleanore F. Walker, Joseph T. Hartman and Terrell R. Johnson, Trustees under Declaration of Trust dated May 1, 2003, dated May 31, 2006 and recorded immediately prior hereto.**

7.      NewRez LLC dba Shellpoint Mortgage Servicing services the underlying mortgage loan and note for the property referenced in this motion for (Movant). In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant, directly or through an agent, has possession of the Note. The Note is endorsed in blank. Movant is the beneficiary or the assignee of the Deed of Trust.

8.      As of May 13, 2025, the unpaid principal balance due is $268,192.32, the deferred principal balance is $15,395.51 and the approximate outstanding amount of Obligations less any partial payments or suspense balance is $304,940.02.

9.      The following chart sets forth the number and amount of post-petition payments due pursuant to the terms of the Note as of May 13, 2025:

| Number of Payments | From | To | Monthly Payment Amount | Total Payments |
|---|---|---|---|---|
| 5 | 01/01/2025 | 05/01/2025 | $1,581.95 | $7,909.75 |
| Less post-petition partial payments (suspense balance): | | | | ($54.15) |

Total:   $7,855.60

10.      As of May 13, 2025, the total post-petition arrearage/delinquency is $7,855.60, consisting of (i) the foregoing total of post-petition payments in the amount of $7,855.60, plus (ii) the following fees:

| Fee Description | Amount |
|---|---|
| N/A | $0.00 |

11.     In addition, reasonable attorney fees and court filing costs not to exceed $749.00 will be incurred for representation in this matter.

12.     A copy of the post-petition payment history is attached hereto as <u>Exhibit 1.</u>

13.     Cause exists for relief from the automatic stay for the following reasons:

    i.     Movant's interest in the Property is not adequately protected.

    ii.     Post-Petition payments required by the confirmed plan have not been made to Movant.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.     Relief from the stay for all purposes allowed by applicable law, the Note, and the Deed of Trust, including but not limited to allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Deed of Trust.

2.     That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3.     That relief be granted as to the Codebtor under 11 U.S.C. §1301(c)(3) and the Debtor pursuant to 11 U.S.C. §362(d).

4.     For such other relief as the Court deems proper.


Dated: June 4, 2025

                      NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING AS SERVICER FOR DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR MORGAN STANLEY IXIS REAL ESTATE CAPITAL TRUST 2006-2 MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2006-2

By: <u>**/s/ D. Carol Sasser**</u>
***Eric D. White,*** Esquire, Bar No. 21346
***D. Carol Sasser***, Esquire, Bar No. 28422
***Kim R. Gershen,*** Esquire, Bar No. 41467
448 Viking Drive, Suite 350
Virginia Beach, VA 23452
***Daniel J. Pesachowitz***, Esquire, Bar No. 74295
6100 Executive Blvd., Suite 400
Rockville, MD 20852
Samuel I. White, P.C.
Tel: (757) 490-9284
Fax: (757) 490-8143
dsasser@siwpc.com

CERTIFICATE OF SERVICE

I certify that on June 4, 2025, the foregoing Motion was served via CM/ECF on Suzanne E. Wade, Trustee, at the email address registered with the Court, and that a true copy was mailed via first class mail, postage prepaid, to Alfred Antonio Wilson, Pro Se Debtor, 225 Taylor Ridge Way, Palmyra, VA 22963, and Feda Wilson, Codebtor, 225 Taylor Ridge Way, Palmyra, VA 22963.

/s/ D. Carol Sasser
D. Carol Sasser, Esquire
Samuel I. White, P.C.

**Exhibit**

**A**

OIS#

MIN: ▮▮▮▮

Loan Number: ▮▮▮▮

# ADJUSTABLE RATE NOTE

## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)-Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

JUNE 5, 2006                ORANGE            CALIFORNIA
[Date]                      [City]             [State]

225 TAYLOR RIDGE WAY, PALMYRA, VIRGINIA 22963-4931
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 357,540.00        (this amount is called "Principal"), plus interest, to the order of Lender. Lender is MASTER FINANCIAL, INC., A CALIFORNIA CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        7.250 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st   day of each month beginning on AUGUST 1           , 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JULY 1, 2036           , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  P.O. BOX 1109, ORANGE, CALIFORNIA 92856

or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 2,439.05         . This amount may change.** See attached Interest Only Note Addendum.

#### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT
For Use in VIRGINIA Only                Page 1 of 5

Form 3520 1/01
DocMagic *e⅀⊘rms* 800-649-1362
www.docmagic.com

Represents Redacted Information

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A)   Change Dates

The interest rate I will pay may change on the 1st   day of JULY, 2008                , and on that day every 6th    month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B)   The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C)   Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND 000/1000                          percentage points (      5.000   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D)   Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than      10.250  % or less than      7.250  %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000                    percentage point(s) (    1.000    %) from the rate of interest I have been paying for the preceding 6      months. My interest rate will never be greater than      14.250  %. My interest rate will never be less than   7.250  %.

### (E)   Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F)   Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.   BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT
For Use in VIRGINIA Only                                          Page 2 of 5

Form 3520 1/01
DocMagic *eForms* 800-649-1362
www.docmagic.com

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
        5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below). "Presentment" means the right to require the Note Holder to demand payment of amounts due.

---

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)--Single Family
Fannie Mae MODIFIED INSTRUMENT
For Use in VIRGINIA Only                    Page 3 of 5

Form 3520 1/01
DocMagic ℯℱℴr𝓂𝓈 800-649-1362
www.docmagic.com

"Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT
For Use in VIRGINIA Only                    Page 4 of 5

Form 3520 1/01
DocMagic *eForms* 800-649-1362
www.docmagic.com

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                 _____ (Seal)
ALFRED WILSON          -Borrower                                       -Borrower


_____ (Seal)                 _____ (Seal)
                       -Borrower                                       -Borrower


_____ (Seal)                 _____ (Seal)
                       -Borrower                                       -Borrower


                                                        *[Sign Original Only]*

This is to certify that this is the Note described in and secured by a Deed of Trust dated  JUNE 5
2006                      , on the Property located in  FLUVANNA                  , Virginia.

My Commission Expires:   2/29/08

_____
Notary Public

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT
For Use in VIRGINIA Only                    Page 5 of 5

Form 3520 1/01
DocMagic *e*Forms 800-649-1362
www.docmagic.com

Loan # ████

# ALLONGE TO PROMISSORY NOTE

Attached to a certain Promissory Note executed by  Alfred Wilson

In favor of Master Financial Inc., A California Corporation in the principal sum of

$ 357,540 Dated June 5, 2006

FOR VALUE RECEIVED,


Pay to the order of


without recourse.



Master Financial Inc., a California Corporation

By: _____
Barbara Ybarra, Operations Manager

MIN: ███████████████████                Loan Number: ████████

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE PROMISSORY NOTE

Property Address: 225 TAYLOR RIDGE WAY, PALMYRA, VIRGINIA 22963-4931

**THIS INTEREST-ONLY ADDENDUM** ("ADDENDUM") is made this 5th   day of JUNE
2006       and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated
the same date as the Addendum executed by the undersigned and payable to MASTER FINANCIAL,
INC., A CALIFORNIA CORPORATION                                (the "Lender").

**THIS ADDENDUM** supersedes and replaces Sections 3(A), 3(B), 4(C) and 7(A) of the Note. This Addendum does
not supersede, replace or revise any other Section of the Note.

## 3. PAYMENTS

### (A)  Time and Place of Payments

During the first   60   months of the loan (the "Interest-Only Period"), I will make monthly payments in the
amount sufficient to pay interest only as it accrues on the unpaid principal balance. Thereafter, for the remaining
300  months of the loan, I will make monthly payments in an amount sufficient to repay fully the unpaid principal
balance of the Note as of the end of the Interest-Only Period.

I will make my monthly payments on the   1st   day of each month. I will make my payments beginning on
AUGUST 1, 2006            .
I will make these payments every month until I have paid all of the principal and interest and any other charges
described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date
and will be applied to interest before principal. If, on JULY 1, 2036          , I still owe amounts
under this Note, I will pay those amounts in full on that date which is called the "Maturity Date."

I will make my payments at P.O. BOX 1109, ORANGE, CALIFORNIA 92856

                                                           or at a different place if required by the Note Holder.

### (B)  Amount of My Initial Monthly Payment

Each of my initial monthly payments will be in the amount of U.S. $ 2,160.14          . This payment
amount is based on the original principal balance of the Note. I understand that the payment amount may change.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (C)  Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND
000/1000                      percentage point(s) (      5.000 %) to the current index for
the Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one
percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest
rate until the next Change Date occurs.

During the Interest-Only Period, the Note Holder will determine the amount of the monthly payment that would
be sufficient to pay accrued interest on the unpaid principal balance. This will be the amount of my monthly payment
until the earlier of the next Change Date or the end of the Interest-Only Period. However, if I make a voluntary
prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced
to the amount necessary to pay the required interest at the then current interest rate on the lower principal balance.

*DocMagic eⓇ* 800-649-1362
*www.docmagic.com*

At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal balance that I will owe in substantially equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. During the Interest-Only Period, the amount of the charge will be          5.000  % of my overdue payment of interest. Thereafter, the amount of the charge will be          5.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest Only Addendum to Adjustable Rate Note.

Borrower ALFRED   WILSON            Date          Borrower                          Date

Borrower                          Date          Borrower                          Date

Borrower                          Date          Borrower                          Date

DocMagic *eForms* 800-649-1362
www.docmagic.com

# PREPAYMENT ADDENDUM TO NOTE

Loan Number: ▓▓▓▓▓

Date: JUNE 5, 2006

Borrower(s): ALFRED  WILSON

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this   5th      day of
JUNE,  2006          , and is incorporated into and shall be deemed to amend and supplement
that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of MASTER
FINANCIAL, INC.

("Lender") and dated the same date as this Addendum.  Repayment of the Note is secured by a Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date
as this Addendum.  To the extent that the provisions of this Addendum are inconsistent with the provisions of the
Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Note, Borrower
and Lender further covenant and agree as follows:

Section  5  of the Note is amended to read in its entirety as follows:

### 5 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT PENALTY

I have the right to make payments of Principal at any time before they are due.  A payment
of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note
Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not
made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe
under the Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid
interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount
of the Note.  If I make a partial Prepayment, there will be no changes in the due dates of my
monthly payment unless the Note Holder agrees in writing to those changes.

If the Note provides for changes in the interest rate, my partial Prepayment may reduce the
amount of my monthly payments after the first Change Date following my partial Prepayment.
However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

Section 6.1-330.83 of the Virginia Statutes Annotated provides as follows:  "The
prepayment penalty in the case of a loan secured by a mortgage or deed of trust on a home which
is occupied or to be occupied in whole or in part by a borrower shall not be in excess of two percent
of the amount of such prepayment."  Accordingly, if within TWENTY-FOUR ( 24    ) months
from the date the Security Instrument is executed, I make a Prepayment, I will pay a Prepayment
Charge in an amount equal to          TWO         percent (    2.000  %)
of the amount of the Prepayment.

---

DocMagic ☎︎ 800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

_____   _____
Borrower ALFRED WILSON       Date   Borrower                    Date


_____   _____
Borrower                     Date   Borrower                    Date


_____   _____
Borrower                     Date   Borrower                    Date

DocMagic *eFORMS* 800-649-1362
www.docmagic.com

**Exhibit**

**B**

This instrument prepared by:    MASTER FINANCIAL, INC.

After Recording Return To:
MASTER FINANCIAL, INC.
505 CITY PARKWAY WEST, #800
ORANGE, CALIFORNIA 92868
Loan Number: ███████

Tax Map Reference No.:

PIN: ███████

──────────────── [Space Above This Line For Recording Data] ────────────────

## DEED OF TRUST

**MIN:** ███████████████

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by    ALFRED WILSON AND FEDA WILSON

as Borrower (trustor), to    TRUST TITLE SERVICES, Inc., a Virginia Corp.

as Trustee, for the benefit of Mortgage Electronic Registration Systems, Inc., as beneficiary.

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  **"Security Instrument"** means this document, which is dated    JUNE 5, 2006    , together with all Riders to this document.
(B)  **"Borrower"** is  ALFRED WILSON AND FEDA WILSON

Borrower is the trustor under this Security Instrument.
(C)  **"Lender"** is  MASTER FINANCIAL, INC.

Lender is a   A CALIFORNIA CORPORATION                          organized and existing under the laws of   CALIFORNIA
Lender's address is   505 CITY PARKWAY WEST, #800, ORANGE, CALIFORNIA 92868

VIRGINIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3047 1/01                                              Page 1 of 15                 DocMagic ⊂ϜⱺⱤⱮⱾ 800-649-1362
                                                                                          www.docmagic.com

Represents Redacted Information

**(D)** "Trustee" is TRUST TITLE SERVICES, Inc., a Virginia Corp.

Trustee (whether one or more persons) is a Virginia resident and/or a United States- or Virginia-chartered corporation whose principal office is located in Virginia. Trustee's address is

**(E)** "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F)** "Note" means the promissory note signed by Borrower and dated   JUNE 5, 2006
The Note states that Borrower owes Lender   THREE HUNDRED FIFTY-SEVEN THOUSAND
FIVE HUNDRED FORTY AND 00/100   Dollars (U.S. $ 357,540.00   ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JULY 1, 2036

**(G)** "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
**(H)** "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I)** "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | |
|---|---|
| ☒ Adjustable Rate Rider | ☐ Planned Unit Development Rider |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☐ Second Home Rider |
| ☐ Condominium Rider | ☒ Other(s) [specify]   INTEREST ONLY RIDER, PREPAYMENT RIDER TO SECURITY INST |

**(J)** "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K)** "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L)** "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M)** "Escrow Items" means those items that are described in Section 3.
**(N)** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O)** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P)** "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
                    COUNTY                          of                        FLUVANNA                        :
          [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.:

which currently has the address of            225 TAYLOR RIDGE WAY
                                                       [Street]

          PALMYRA                          , Virginia  22963-4931 ("Property Address"):
            [City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

VIRGINIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3047 1/01                                    Page 3 of 15                          DocMagic eForms 800-649-1362
                                                                                       www.docmagic.com

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver,

Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    **Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    **Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards

including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

VIRGINIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3047 1/01                          Page 6 of 15

**6.    Occupancy.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7.    Preservation, Maintenance and Protection of the Property; Inspections.**  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.    Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.    Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to; (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.    Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums

for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security

Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.  **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

DocMagic ✦Rapasse 800-649-1362
www.docmagic.com

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances:

VIRGINIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3047 1/01                                   Page 11 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com

gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.**

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

23.  **Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24.  **Substitute Trustee.**  Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

BK 0686
P199

586 199

**NOTICE**: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witness:                                           Witness:

_____ (Seal)      _____ (Seal)
ALFRED    WILSON        -Borrower          FRDA  WILSON          -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower                                -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower                                -Borrower

VIRGINIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic eRerms 800-649-1362
Form 3047 1/01                          Page 14 of 15                              www.docmagic.com

686 200

State of Virginia
County of ~~FLUVANNA~~ Albemarle

The foregoing instrument was acknowledged before me this 5th day of June, 2006
by    ALFRED   WILSON, FEDA WILSON

He/She/They is/are personally known to me or has/have produced
as identification.

Kelly h Miller

Signature of Person Taking Acknowledgement

Loan Closer

Title or Rank

N/A

Serial Number, if any

(Seal)                                      My commission expires the    20th    day of
February, 2008

DocMagic ☏800-649-1362
www.docmagic.com

386 201

Loan Number: 

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE RIDER

Property Address: 225 TAYLOR RIDGE WAY, PALMYRA, VIRGINIA
22963-4931

**THIS ADDENDUM** is made this 5th   day of  JUNE, 2006                        , and is
incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date
as this Addendum executed by the undersigned and payable to MASTER FINANCIAL, INC.,
A CALIFORNIA CORPORATION                                            (the "Lender").

**THIS ADDENDUM** supplements the Security Instrument and supersedes Section 4(C) of the Rider.

## INTEREST-ONLY PAYMENTS
The Note provides that during the first  60    months of the loan (the "Interest-Only Period"), I will
make monthly payments in the amount sufficient to pay interest only as it accrues on the unpaid principal
balance. Thereafter, for the remaining   300   months of the loan, I will make monthly payments in an
amount sufficient to repay fully the unpaid principal balance of the Note as of the end of the Interest-Only
Period.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (C)   Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE
AND 000/1000                          percentage point(s) (       5.000 %)
to the current index for the Change Date. The Note Holder will then round the result of this addition to the
nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this
rounded amount will be my new interest rate until the next Change Date occurs.
During the Interest-Only Period, the Note Holder will determine the amount of the monthly payment
that would be sufficient to pay accrued interest on the unpaid principal balance. This will be the amount of
my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period.
However, if I make a voluntary prepayment of principal during the Interest-Only Period, my payment
amount for subsequent payments will be reduced to the amount necessary to pay the required interest at the
then current interest rate on the lower principal balance.
At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will
determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal
balance that I will owe in substantially equal monthly payments over the remaining term of the Note. The
result of this calculation will be the new amount of my monthly payment.

DocMagic ℰℱℛ𝓇𝓇𝓇𝓈   800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest Only Addendum to Adjustable Rate Rider.

_____ (Seal)
ALFRED WILSON         -Borrower

_____ (Seal)
PELDA WILSON          -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

_____ (Seal)
                      -Borrower

## 686 203

MIN: ▮▮▮▮▮▮▮▮▮▮▮▮                                    Loan Number: ▮▮▮▮▮▮▮

# ADJUSTABLE RATE RIDER
## (LIBOR Six-Month Index (As Published In *The Wall Street Journal*)
### - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 5th  day of JUNE, 2006                    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Adjustable Rate Note (the "Note") to MASTER FINANCIAL, INC., A
CALIFORNIA CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and located at:

225 TAYLOR RIDGE WAY, PALMYRA, VIRGINIA 22963-4931

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND
THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of       7.250 %. The Note provides for changes
in the interest rate and the monthly payments, as follows:

## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
    **(A)    Change Dates**
    The interest rate I will pay may change on the 1st    day of JULY, 2008                    ,
and on that day every 6th   month thereafter. Each date on which my interest rate could change is called
a "Change Date."
    **(B)    The Index**
    Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
    If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                                    Page 1 of 3

DocMagic ⒺⓇⓇⓇⓇⓇⓂⓈ  800-649-1362
www.docmagic.com

386 204

**(C)   Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
FIVE AND 000/1000                percentage points (     5.000   %) to the Current
Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one
percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be
my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to
repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my
new interest rate in substantially equal payments.  The result of this calculation will be the new amount of
my monthly payment.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than
10.250  % or less than        7.250  %.  Thereafter, my interest rate will never be increased
or decreased on any single Change Date by more than ONE AND 000/1000
                              percentage points (     1.000  %) from the rate of interest
I have been paying for the preceding    6     months.  My interest rate will never be greater than
14.250 %.   My interest rate will never be less than     7.250 %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new
monthly payment beginning on the first monthly payment date after the Change Date until the amount of my
monthly payment changes again.

**(F)   Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount
of my monthly payment before the effective date of any change.  The notice will include information required
by law to be given to me and also the title and telephone number of a person who will answer any question
I may have regarding the notice.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section
18, "Interest in the Property" means any legal or beneficial interest in the Property, including,
but not limited to, those beneficial interests transferred in a bond for deed, contract for deed,
installment sales contract or escrow agreement, the intent of which is the transfer of title by
Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or
if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred)
without Lender's prior written consent, Lender may require immediate payment in full of all
sums secured by this Security Instrument.  However, this option shall not be exercised by
Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this
option if: (a) Borrower causes to be submitted to Lender information required by Lender to
evaluate the intended transferee as if a new loan were being made to the transferee; and (b)
Lender reasonably determines that Lender's security will not be impaired by the loan

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                Page 2 of 3

DocMagic ☎800-649-1362
www.docmagic.com

686  205

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
ALFRED   WILSON          -Borrower

_____ (Seal)
FEDA WILSON              -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

MULTISTATE ADJUSTABLE RATE RIDER--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                    Page 3 of 3

DocMagic €₧₥₥₥₥ 800-649-1362
www.docmagic.com

**586 206**

# PREPAYMENT RIDER

Loan Number: ▮

Date: JUNE 5, 2006

Borrower(s): ALFRED  WILSON, FEDA WILSON

    **THIS PREPAYMENT RIDER** (the "Rider") is made this 5th   day of JUNE,   2006 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
repayment of Borrower's promissory note (the "Note") in favor of MASTER FINANCIAL,
INC., A CALIFORNIA CORPORATION

("Lender").  The Security Instrument encumbers the Property more specifically described in the Security
Instrument and located at

    225 TAYLOR RIDGE WAY, PALMYRA, VIRGINIA 22963-4931
                          [Property Address]

    **ADDITIONAL COVENANTS.**  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

## A.  PREPAYMENT CHARGE
    The Note provides for the payment of a prepayment charge as follows:

### 5.  BORROWER'S RIGHT TO PREPAY; PREPAYMENT PENALTY
    I have the right to make payments of Principal at any time before they are due.  A
payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell
the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment
if I have not made all the monthly payments due under the Note.

    The Note Holder will use my Prepayments to reduce the amount of Principal that I owe
under the Note.  However, the Note Holder may apply my Prepayment to the accrued and
unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the
due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

    If the Note provides for changes in the interest rate, my partial Prepayment may reduce
the amount of my monthly payments after the first Change Date following my partial
Prepayment.  However, any reduction due to my partial Prepayment may be offset by an
interest rate increase.

VIRGINIA PREPAYMENT RIDER - BORROWER OCCUPIED
6/03                        Page 1 of 2                    *DocMagic* ℰℱℴℛℳℐⅅ 800-649-1362
                                                                *www.docmagic.com*

## 686 207

Section 6.1-330.83 of the Virginia Statutes Annotated provides as follows: "The prepayment penalty in the case of a loan secured by a mortgage or deed of trust on a home which is occupied or to be occupied in whole or in part by a borrower shall not be in excess of two percent of the amount of such prepayment." Accordingly, if within TWENTY-FOUR ( 24 ) months from the date the Security Instrument is executed, I make a Prepayment, I will pay a Prepayment Charge in an amount equal to TWO percent ( 2.000 %) of the amount of the Prepayment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)
-Borrower
ALFRED   WILSON

_____ (Seal)
-Borrower
FEDA WILSON

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Loan Number: 

**686 208**

Date: JUNE 5, 2006

Property Address:   225 TAYLOR RIDGE WAY, PALMYRA, VIRGINIA 22963-4931

## EXHIBIT "A"

## LEGAL DESCRIPTION

**TAX MAP NUMBER:**

**ALL** that certain lot or parcel of land, with all improvements thereon and appurtenances thereto, lying and being situate in the Palmyra District of Fluvanna County, Virginia, shown as **Lot 4, Phase I, Taylor Ridge Estates**, on a plat of survey by Rivanna Engineering & Surveying, PLC, dated May 24, 2005, recorded in the Clerk's Office of the Circuit Court of Fluvanna County, Virginia, in Deed Book 639, page 98.

**BEING** the same property conveyed unto Alfred Wilson and Feda Wilson by Deed from Eleanore F. Walker, Joseph T. Hartman and Terrell R. Johnson, Trustees under Declaration of Trust dated May 1, 2003, dated May 31, 2006 and recorded immediately prior hereto.

VIRGINIA: CLERK'S OFFICE OF THE CIRCUIT COURT OF FLUVANNA COUNTY

St. R. Tax ___894___ CO    The foregoing instrument with acknowledgment was
Co. R. Tax ___298___ CO    admitted to record on __June 6__, 20__06__ at
Transfer _____    __13:02__ PM. In D.B. _086_ Page(s)_____.
Clerk ___35___ CO          Recording costs paid as shown.
Grantor Tax
___036 11___ CO    Teste: _____, Deputy Clerk
Total $ __238__ CO                Bouson E. Peterson, Jr., Clerk

A.P.N. #  :

DocMagic e Forms 800-649-1362
www.docmagic.com

Loan Number █████████
Investor Loan Number: ████████

This document was prepared by PHH Mortgage Corporation

**After Recording Return To:**
PHH Mortgage Corporation
Attention: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838

_____ [Space Above This Line For Recording Data] _____

## LOAN MODIFICATION AGREEMENT

Borrower (s): ALFRED WILSON

<u>THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $193,421.33, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.</u>

BALLOON PAYMENT DISCLOSURE
THIS MODIFICATION AGREEMENT INCLUDES A BALLOON PAYMENT, WHICH MEANS THAT EVEN IF YOU MAKE ALL THE SCHEDULED PAYMENTS WHEN DUE, THE LOAN WILL NOT BE PAID IN FULL AT THE END OF ITS TERM. AS A RESULT, ON THE MATURITY DATE OUTLINED WITHIN THIS AGREEMENT, YOU WILL BE REQUIRED TO REPAY, IN A SINGLE PAYMENT, THE ENTIRE REMAINING PRINCIPAL BALANCE PLUS ALL ACCRUED BUT UNPAID INTEREST AND ALL OTHER AMOUNTS OWING ON THAT DATE (INCLUDING BUT NOT LIMITED TO ALL ADVANCES MADE BY LOAN SERVICER UNDER THE TERMS OF THE SECURITY INSTRUMENT).

_CAUTION TO BORROWER: NO OBLIGATION TO REFINANCE_ – LOAN SERVICER HAS NO OBLIGATION TO REFINANCE THIS LOAN OR MAKE YOU A NEW LOAN ON THE MATURITY DATE. IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN AGAINST THE PROPERTY TO MAKE THE BALLOON PAYMENT. ASSUMING ANOTHER LENDER MAKES YOU A NEW LOAN ON THE MATURITY DATE, YOU WILL PROBABLY BE CHARGED INTEREST AT THE MARKET RATE PREVAILING AT THAT TIME. SUCH INTEREST RATE MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY AGAIN HAVE TO PAY COMMISSIONS, FEES AND EXPENSES FOR THE ARRANGING OF THE NEW LOAN. IN ADDITION, IF YOU ARE UNABLE TO MAKE THE MONTHLY PAYMENTS OR THE BALLOON PAYMENT, YOU MAY LOSE THE PROPERTY AND ALL OF THE EQUITY THROUGH FORECLOSURE. KEEP THIS IN MIND IN DECIDING WHETHER TO AGREE TO THE TERMS OF THIS LOAN MODIFICATION.

Represents Redacted Information

Document      Page 40 of 54

The debtor, ALFRED WILSON, and Deutsche Bank National Trust Company, as Trustee for Morgan Stanley Ixis Real Estate Capital Trust 2006-2 Mortgage Pass Through Certificates, Series 2006-2 through the servicer of the underlying mortgage loan agreement, PHH Mortgage Corporation, have agreed to modify the terms of said underlying mortgage loan agreement. Deutsche Bank National Trust Company, as Trustee for Morgan Stanley Ixis Real Estate Capital Trust 2006-2 Mortgage Pass Through Certificates, Series 2006-2 is the owner of the loan and retains all rights to collect payments as per the underlying mortgage loan agreement. PHH Mortgage Corporation, remains servicer for said underlying mortgage loan agreement.

This Loan Modification Agreement ("Agreement"), made this 4th day of February, 2020 ("Modification Agreement Date"), between ALFRED WILSON ("Borrower") and PHH Mortgage Corporation, Lender/Servicer or Agent for Lender/Servicer ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument") dated 06/05/2006 and recorded in the Records of Fluvanna County, VA and (2) the Note, bearing the same date as, and secured by, the Security Instrument (collectively, "Loan Documents"), which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

225 TAYLOR RIDGE WAY
PALMYRA, VA 22963

The real property described being set forth as follows:

(Legal Description Attached, if applicable, for Recording Only)

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

**Representations:**

1. Borrower is experiencing a financial hardship and as a result, 1) is or will be in default under the Loan Documents and 2) does not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments due under the Loan Documents.
2. Under penalty of perjury, if required by the Lender, borrower provided Lender with full and complete information that, when provided, accurately stated borrower's income, expenses, and assets. To the extent requested by Lender, borrower provided documents that supported that information.
3. Borrower has made any and all required trial period plan payments or down payments.
4. Borrower currently has sufficient income to support the financial obligations under the Loan Documents, as modified by this Agreement.
5. Borrower understands that property title may be reviewed as a precondition to the modification.

**Acknowledgements and Preconditions to the Modification:**

1. Lender has no obligation to make any modification of the Loan Documents if any of the requirements under this Agreement are not met.
2. Prior to the Modification Effective Date (defined as 02/01/2020), if Lender determines that any of the representations above are no longer true and correct, 1) the Loan Documents will not be modified, 2) this Agreement will not be valid, and 3) Lender will have all of the rights and remedies provided by the Loan Documents.
3. The Loan Documents will not be modified unless and until 1) Lender approves this Agreement and 2) the Modification Effective Date has occurred.

**Modified Loan Terms:**

1. If all of Borrower's representations above continue to be true and correct and all preconditions to the modification set forth above have been met, the Loan Documents will automatically become modified on 02/01/2020. If Borrower has failed to make any payments that are a precondition to this modification or receipt of clear title is not received, this modification will not take effect.

The new Maturity Date will be 11/01/2036.

Borrower understands that in order to reach an affordable payment under this modification, the loan may have been re-

amortized beyond the maturity date. This means that if all payments are made in accordance with the loan terms, when Borrower reaches the maturity date, there will be an outstanding amount still due.

This amount includes an interest-bearing balloon payment in the amount of $193,421.33 ("Balloon Payment") which is due when the loan reaches maturity, sold, refinanced or otherwise accepted by the Lender as paid in full. Borrower specifically acknowledges that this is a balloon modification and therefore Borrower will have a balloon payment due at maturity in the approximate amount of $193,421.33.

BALLOON PAYMENT: THIS MORTGAGE LOAN CONTAINS A BALLOON PAYMENT PROVISION. A BALLOON PAYMENT IS A SCHEDULED LUMP SUM USUALLY DUE AT THE END OF THE MORTGAGE LOAN TERM THAT IS SIGNIFICANTLY LARGER THAN THE OTHER REGULARLY SCHEDULED PERIODIC PAYMENTS. IF YOU CANNOT PAY THE BALLOON PAYMENT WHEN DUE, YOU MAY HAVE TO OBTAIN A NEW LOAN TO MAKE THE BALLOON PAYMENT OR YOU MAY LOSE YOUR PROPERTY THROUGH FORECLOSURE. BEFORE DECIDING TO TAKE THIS LOAN, CONSIDER YOUR ABILITY TO PAY THE BALLOON PAYMENT WHEN IT COMES DUE. THE BALLOON PAYMENT ON THE MORTGAGE LOAN YOU HAVE APPLIED FOR IS DUE 201 MONTHS FROM THE DATE YOUR MORTGAGE LOAN BEGINS.

CAUTION TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN THAT YOU OBTAIN AT THIS TIME.

2. The current Unpaid Principal Balance is $277,097.46. The New Principal Balance of the Note will be $286,456.40 (the "New Principal Balance"). This includes amounts and arrearages that are past due as of the Modification Effective Date (including, but not limited to, unpaid and any previously deferred principal and interest, fees, escrow advances and other costs, collectively, "Unpaid Amounts") excluding any fees, costs and/or corporate advances not added to the account as of the Modification Agreement Date and amounts not added to the New Principal Balance due to investor and/or mortgage insurer restrictions less any amounts paid to the Lender but not previously credited to the Loan. Any amounts not added to the New Principal Balance will remain on the account until paid and will become due when the interest-bearing balance is paid in full or upon maturity as applicable pursuant to State or Federal law.

3. The New Principal Balance may represent the sum of the "Deferred Principal Balance" (if applicable), the "Principal Forgiveness" (if applicable) and the "Interest Bearing Principal Balance." The Interest Bearing Principal Balance is $286,456.40. Borrower understands that by agreeing to add the Unpaid Amounts to the Unpaid Principal Balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid interest that is added to the New Principal Balance, which would not happen without this Agreement.

4. Borrower promises to pay the New Principal Balance, plus interest, and any future fees/costs to the order of the Lender. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 2.00003%, beginning 02/01/2020. Borrower promises to make monthly payments of principal and interest of U.S. $867.47, beginning on 03/01/2020 and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. Borrower promises to also pay any applicable monthly escrow payments as outlined in this Agreement. The initial monthly escrow amount is $570.12. The yearly rate of 2.00003% will remain in effect until principal and interest are paid in full. If on 11/01/2036 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date. Borrower agrees to pay in full all amounts still owed under the Note and the Security Instrument by the earliest of: (i) The date Borrower sells or transfers an interest in the Property, (ii) The date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

The initial monthly escrow amount is $570.12. The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total

monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

Borrower's payment schedule for the modified Loan is as follows:

| Years | Interest Rate (%) | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* (adjusts periodically) | Total Monthly Payment* (adjusts periodically) | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 16.75 | 2.00003 | 02/01/2020 | $867.47 | $570.12 | $1,437.59 | 03/01/2020 | 201 |

*The escrow payments may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses and therefore the total monthly payment may change accordingly. The escrow payment amount shown is based on current data and represents a reasonable estimate of expenditures for future escrow obligations; however, escrow payments may be adjusted periodically in accordance with applicable law.

## Additional Agreements:

1. **Transfer of Property.** If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

2. **Original Loan Document Conditions.** Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument and Note, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument and Note; however, if applicable, the following terms and provisions are forever canceled, null and void, as of 02/01/2020:

   a. all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   b. all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

3. Borrower understands and agrees that:

   a. **Default Under the Modification.** All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   b. **Original Loan Document Conditions.** All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender. Borrower agrees that the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

c. **Modification Does Not Constitute Release.** Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

d. **Costs and Expenses.** All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender or not permitted per State or federal law.

e. **Agreement to Provide Any Additional Modification Documents.** Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower. Borrower will execute such other documents as may be reasonably necessary to correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided to Borrower for Borrower's signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement. Borrower agrees to deliver any such corrective documents within ten (10) days after Borrower receives the Lender's written request for such replacement.

f. **Agreement of Use of Non-Public Information.** Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

g. **Consent to Contact.** Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

4. **Escrow Account.** By this section, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked and Borrower has been advised of the amount needed to fully fund the Escrow Account.

Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all

purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

5. **Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be or become prohibited or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Agreement.

6. **Inclusion of Exhibits.** Borrower authorizes Lender to attach an Exhibit A to this Agreement, which may include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk (or other recordation office) to allow for recording if and when Lender seeks recordation.

7. **Errors and Omissions.** That if any documents related to the loan documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, Borrower will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of Borrower under this section shall be referred to as "Documents." Borrower agrees to deliver the Documents within ten (10) days after Borrower receives the Lender's written request for such replacement. At Lender's option, this Agreement will be void and of no legal effect and the loan terms will revert to the terms prior to the approved modification.

8. **Final Agreement.** This Agreement may not be supplemented, changed, modified or omitted except by written document executed by both the Lender and the Borrower. This Modification constitutes the entire agreement between the Lender

and Borrower and supersedes all previous negotiations and discussions between the Borrower and the Lender and neither prior evidence nor any prior or other agreement shall be permitted to contradict or vary its terms. There are no promises, terms, conditions, or obligations other than those contained in this Agreement.

9. **Additional Events of Default.** Without limiting the other events of default set forth in the Loan Documents, Borrower will be in default under this Agreement and under the Loan Documents upon the occurrence of any one or more of these events:

    a. Any material representation or warranty made by you in the Loan Documents, this Agreement, or any initial agreement proves to be false or misleading in any respect.

    b. Borrower fails to make the New Monthly Payments as required by this Agreement.

    c. Borrower sells or conveys any interest in the Property without Lender's prior written consent.

    d. Breach of any of the terms or provisions of this Agreement.

10. **Consequences of Default.** If Borrower defaults under this Agreement or the Loan Documents after the Modification Effective Date (your "Default"), Lender may, in addition to the remedies provided by the Loan Documents, subject only to applicable law, institute any foreclosure or collection proceedings without prejudice for having accepted any payments, including but not limited to the New Monthly Payments, under this Agreement and exercise any of its rights and remedies against Borrower under the Loan Documents and/or this Agreement.

11. **Mortgage Insurance.** Borrower understands that the mortgage insurance premiums on the Loan, if applicable, may increase as a result of the capitalization which may result in a higher total monthly payment. Furthermore, the date on which Borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

12. **Credit Reporting.** Lender is required to report factual information to the credit reporting agencies. Lender may report information about the account to credit bureaus. Late payments, missed payments, or other defaults on the account may be reflected in the credit report.

13. **No Novation.** Borrower expressly agrees that this Agreement is not a new loan from Lender but simply the modification of the existing obligations under the Loan Documents. Neither Borrower nor Lender has any intention to extinguish or discharge the indebtedness or the liens evidenced by the Loan Documents.

## BORROWER ACKNOWLEDGEMENT

**IMPORTANT – Do NOT sign this Agreement unless you are in the presence of a notary. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to PHH Mortgage Corporation.**

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

2/10/2020
Date

ALFRED WILSON

State of _Virginia_

County of _Albemarle_

On this _10th_ day of _February, 2020_, before me, the undersigned, a Notary Public in and for said county and state, personally appeared _Alfred W Wilson_ _personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

Notary Public

My Commission Expires: _8-31-2023_

LARRY L. MILLER
NOTARY PUBLIC
REG.
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES AUG. 31, 2023

## LENDER ACKNOWLEDGEMENT

### (For Lender's Signature Only)

Lender acknowledges that no representations, agreements or promises were made or any of its representations other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

PHH Mortgage Corporation

Authorized Signer

**Hubert Paul**          MAR 0 3 2020

Date

State of _____

County of _____

On this ___ day of _____, ____, before me, the undersigned, a Notary Public in and for said county and state, personally appeared _____, personally known to me or identified to my satisfaction to be the person who executed the within instrument as _____ of PHH Mortgage Corporation., said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

_____
Notary Public

My Commission Expires: _____

INTERNET REPRINT

0907
0175

4200

APN #

RETURN TO & PREPARED BY:
Atlantic Law Group, LLC
Attn: Assignments/ Pre-Sale
1602 Village Market Blvd., S.E.
Suite 310 PO Box 2548
Leesburg, VA 20175

MIN:
MERS Ph.#: (888) 679 – 6377

## ASSIGNMENT OF DEED OF TRUST
## COMMONWEALTH OF VIRGINIA

This **ASSIGNMENT OF DEED OF TRUST** from **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
(MERS)**, as nominee for **MASTER FIANANCIAL INC.**, whose address is PO Box 2026 Flint, MI 48501-2026, its
successors and assigns, ("Assignor) to **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR
MORGAN STANLEY IXIS REAL ESTATE CAPITAL TRUST 2006-2 MORTGAGE PASS THROUGH
CERTIFICATES, SERIES 2006-2**, whose address is c/o Ocwen Loan Servicing,LLC, 5720 Premier Park Dr, West
Palm Beach, FL 33407, (Assignee) all its rights, title and interest in and to a certain mortgage duly recorded in the
Office of the County Recorder of **FLUVANNA** County, State of **VIRGINIA**, as follows;

Trustor: ALFRED WILSON AND FEDA WILSON
Trustee: TRUST TITLE SERVICES, INC
Beneficiary: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR
MASTER FIANANCIAL INC.
Document Date: JUNE 05, 2006
Amount: $357,540.00
Recording Date: JUNE 06, 2006
Book/Volume/Docket/Liber: 686
Page/Folio: 186
Instrument #: 3244
Property address: 225 TAYLOR, RIDGE WAY, PALMYRA VA 22963-4931
Property described as follows:
**LEGAL DESCRIPTION: SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.**

This Assignment is made without recourse, representation or warranty.

DATED: OCTOBER 14, 2013

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
(MERS)**

Witnesses:

BY:

(1)                      Cecile Washington

NAME:    **Noemi Morales**
TITLE:    Assistant Secretary

(2)
                         **Derek Garrett**

STATE OF FLORIDA        )
                        )ss.
COUNTY OF PALM BEACH    )

The foregoing instrument was acknowledged before me this 14TH DAY OF OCTOBER, 2013, by
**Noemi Morales**, the Assistant Secretary at MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., on behalf of the corporation.  He/She is personally known to me.

Notary Public, State of Florida
Victoria Vazquez
My Commission
Expires 10/21/

Notary Public –
State of Florida

**Victoria Vazquez**

Represents Redacted Information

Q907 ·
0176

907 176

APN #
Prepared By: Joe Simmons
When Recorded Mail To:
Ocwen Loan Servicing,LLC
5720 Premier Park Dr,
West Palm Beach, FL 33407
Phone Number: 561-682-8835

MIN:
MERS PH.#: (888) 679 – 6377

**EXHIBIT "A"**

**ALL** that certain lot or parcel of land, with all improvements thereon and
appurtenances thereto, lying and being situate in the Palmyra District of
Fluvanna County, Virginia, shown as **Lot 4, Phase I, Taylor Ridge Estates**, on a
plat of survey by Rivanna Engineering & Surveying, PLC, dated May 24, 2005,
recorded in the Clerk's Office of the Circuit Court of Fluvanna County, Virginia, in
Deed Book 639, page 98.

**BEING** the same property conveyed unto Alfred Wilson and Feda Wilson by
Deed from Eleanore F. Walker, Joseph T. Hartman and Terrell R. Johnson,
Trustees under Declaration of Trust dated May 1, 2003, dated May 31,
2006 and recorded immediately prior hereto.

VIRGINIA: CLERK'S OFFICE OF THE CIRCUIT COURT OF FLUVANNA COUNTY

| | | |
|---|---|---|
| St. R. Tax | 894. 00 | The foregoing instrument with acknowledgment was |
| Co. R. Tax | 298.60 | admitted to record on June 6 , 20 06 at |
| Transfer | | 13:02 P.M. In D.B. 686 Page(s) |
| Clerk | 35. 00 | Recording costs paid as shown. |
| Grantor Tax | | |
| | 896 11. 00 | Teste: Cathy Allee , Deputy Clerk |
| Total $ | 1,238.60 | Bouson E. Peterson, Jr., Clerk |

INSTRUMENT #1304205
RECORDED IN THE CLERK'S OFFICE OF
FLUVANNA COUNTY ON
OCTOBER 29, 2013 AT 11:15AM

BOUSON E. PETERSON, CLERK
RECORDED BY: TLL

**Exhibit C**

# 225 TAYLOR RIDGE WAY

| | | | |
|---|---|---|---|
| **Location** | 225 TAYLOR RIDGE WAY | **Tax Map #** | ███████ |
| **Acct#** | ████ | **Owner** | WILSON, ALFRED & FEDA KHATEEB |
| **Total Market Va...** | $817,400 | **PID** | ██████ |
| **Building Count** | 1 | **Legal Description** | INST 190000592 AC 3.70 "TAYLOR RIDGE EST" |

## Current Value

| Assessment | | | |
|---|---|---|---|
| **Valuation Year** | **Improvements** | **Land** | **Total** |
| 2025 | $759,700 | $57,700 | $817,400 |

## Owner of Record

Owner   WILSON, ALFRED & FEDA KHATEEB

Address   225 TAYLOR RIDGE WAY
PALMYRA, VA 22963

Sale Price   $0
Certificate   19
Book & Page 592/0
Sale Date   03/04/2019
Instrument   00

## Ownership History

| Ownership History | | | | | |
|---|---|---|---|---|---|
| **Owner** | **Sale Price** | **Certificate** | **Book & Page** | **Instrument** | **Sale Date** |
| WILSON, ALFRED & FEDA KHATEEB | $0 | 19 | 592/0 | 00 | 03/04/2019 |
| WILSON, ALFRED & FEDA | $446,925 | 0 | 686/183 | 00 | 06/06/2006 |
| WALKER, ELENORE F TRUSTEE | $446,925 | 0 | 686/180 | 00 | 06/06/2006 |
| JONES, TARA D | $415,500 | 0 | 659/187 | 00 | 11/02/2005 |
| SOUTHERN PROPERTY LLC ET AL | $65,000 | 0 | 592/46 | 00 | 07/27/2004 |

## Building Information

### Building 1 : Section 1

Year Built:          2006
Living Area:         3,213

| Building Attributes | |
|---|---|
| **Field** | **Description** |
| Model | Residential |

Represents Redacted Information

| Style | Building Layout |
|---|---|
| Grade | Grade A |
| Grade Adjust | -0.10 |
| Stories | 2.0 |
| Num Units | |
| Roof Type | HIP |
| Roof Cover | COMP SHINGLE |
| Exterior Wall 1 | WOOD/FRAME |
| Exterior Wall 2 | |
| Heat System | HEAT PUMP |
| Heat Fuel | ELECTRIC |
| AC Type | 100% |
| Interior Wall 1 | DRYWALL |
| Interior Wall 2 | |
| Interior Wall 3 | |
| Interior Floor 1 | SOFT WOOD |
| Interior Floor 2 | CARPET |
| Interior Floor 3 | CERAMIC TILE |
| Total Room(s) | 14 |
| Bedroom(s) | 5 |
| Full Bath(s) | 4 |
| Half Bath(s) | |
| Extra Fixture(s) | |
| Extra Kitchen(s) | |
| Fireplace(s) | 1 |
| Stacked Fireplace(s) | |
| Gas Fireplace(s) | 1 |
| Flue(s) | |
| Metal Flue(s) | |
| Inop Flue/FPL | |
| Legacy Area | 3213 |
| Foundation | CONCRETE |
| Basement | FULL BSMT |
| Basement Area | 1417 |
| Fin Bsmt Area | 1417 |
| FBM Quality | Good |
| Num Cars - Built In | |
| Garage Type | VINYL |
| Num Cars - Garage | 2 |

**Building Layout**



(ParcelSketch.ashx?pid=▓▓▓▓▓▓

| **Building Sub-Areas (sq ft)** | | | **Legend** |
|---|---|---|---|
| **Code** | **Description** | **Gross Area** | **Living Area** |
| FUS | FINISHED UPPER STORY | 1,417 | 1,417 |
| BASE | FIRST FLOOR | 1,400 | 1,400 |
| LAG | LIVING AREA ABOVE GARAGE | 484 | 484 |
| ADDIT | ADDITION | 17 | 17 |
| OVH | OVERHANG | 16 | 16 |
| BSMT | BASEMENT | 1,417 | 0 |
| DECK | DECK | 216 | 0 |
| GARFR | FRAME GARAGE | 484 | 0 |
| PAT | PATIO | 216 | 0 |
| POR | PORCH | 133 | 0 |
| SFLA | SFLA | -121 | -121 |
| | | 5,679 | 3,213 |

| Carport Type | |
|---|---|
| Num Cars - Carport | |
| Garage Type 2 | |
| Num Cars - Garage 2 | |
| SEW/WTR/LND | NO |
| Split Foyer | No |
| Split Level | No |

# Land

## Land Use

Use Code   200R
Description SINGLE FAMILY SUBURB - RES
Zone       A-1

## Land Line Valuation

Size (Acres)      3.7
Total Market Land $57,650

# Outbuildings

| Outbuildings | | | | | | **Legend** |
|---|---|---|---|---|---|---|
| **Code** | **Description** | **Sub Code** | **Sub Description** | **Size** | **Value** | **Bldg #** |
| PAVMT | Pavement | | | 1.00 UN | $4,000 | 1 |
| SHED | Shed | FR | Frame | 1.00 UN | $600 | 1 |

# Valuation History

| Assessment | | | |
|---|---|---|---|
| **Valuation Year** | **Improvements** | **Land** | **Total** |
| 2024 | $561,700 | $57,700 | $619,400 |
| 2023 | $561,700 | $57,700 | $619,400 |
| 2022 | $476,700 | $52,700 | $529,400 |

(c) 2025 Vision Government Solutions, Inc. All rights reserved.

| Post-Petition Due date | Date Received | Amount Received | Amount Due | Suspense Application | Suspense Balance |
|---|---|---|---|---|---|
| | | | | $        - | $        - |
| 10/1/2024 | 11/15/2024 | $1,600.00 | $1,581.95 | $      18.05 | $      18.05 |
| 11/1/2024 | 12/13/2024 | $1,600.00 | $1,581.95 | $      18.05 | $      36.10 |
| 12/1/2024 | 1/14/2025 | $1,600.00 | $1,581.95 | $      18.05 | $      54.15 |
| 1/1/2025 | | | $1,581.95 | (1,581.95) | $   (1,527.80) |
| 2/1/2025 | | | $1,581.95 | (1,581.95) | $   (3,109.75) |
| 3/1/2025 | | | $1,581.95 | (1,581.95) | $   (4,691.70) |
| 4/1/2025 | | | $1,581.95 | (1,581.95) | $   (6,273.65) |
| 5/1/2025 | | | $1,581.95 | (1,581.95) | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| | | | | $        - | $   (7,855.60) |
| 8 | 3 | $4,800.00 | $12,655.60 | $   (7,855.60) | |

| | Loan Number | |
|---|---|---|
| | Debtor | Alfred Antonio W|
| | BK filed date | 9/4/2024 |
| | BK Case # | 24-33304 |
| | Loan Acquired | |
| | Post Next Due | 1/1/2025 |
| | Suspense | $        54.15 |

| Due Date | P&I | Interest Rate | Escrow | Total | Filed w/Courts |
|---|---|---|---|---|---|
| 10/1/2024 | $    867.47 | 2.000% | $714.48 | $ 1,581.95 | 11/8/2024 |

| Due Date | Due Amount | # Months | Total Due |
|---|---|---|---|
| 1/1/25 - 5/1/25 | $1,581.95 | 5 | 7,909.75 |
| | | | $        - |
| | | | $        - |
| | | | $        - |
| | | | $        - |
| | | | $        - |
| | | | $        - |
| | | | $        - |
| | | | $        - |
| | | | $        - |
| | | | $        - |
| | | | $        - |
| | | Subtotal | $   7,909.75 |
| | | Less Unapplied | $        54.15 |
| | | Total to bring current | $   7,855.60 |

$        7,909.75
$       (7,855.60)
$             54.15   unapplied

**Payment Address:**
Shellpoint Mortgage Servicing
PO Box 650840
Dallas, TX 75265-0840

**Overnight Payment Address:**
Shellpoint Mortgage Servicing
Attn Payment Processing
75 Beattie Place Ste LL202
Greenville, SC 29601